IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ERIC HUMBERT,** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL NO. 1:CV-05-1967** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **MICHAEL J. KURTZ**, *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Plaintiff Eric Humbert ("Plaintiff" or "Humbert"), an inmate currently confined at the United States Penitentiary at Allenwood ("USP-Allenwood") in White Deer, Pennsylvania, commenced this action *pro se* by filing a 42 U.S.C. § 1983 civil rights complaint. Plaintiff subsequently moved for leave to file an amended complaint, his request was granted (Doc. 66), and his amended complaint (Doc. 67) was filed on December 1, 2006. Plaintiff alleges that his DNA profile was improperly placed in the Combined DNA Index System ("CODIS") and that he was improperly registered as a sex offender under Megan's Law. (Doc. 67 ¶¶ 19, 20.)

Presently before the court is Defendants' motion to dismiss (Doc. 74) pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons set forth below, Defendants' motion will be granted in part and denied in part.

## I.    Background

### A.    Facts

Humbert was arrested on December 13, 1992.  (Doc. 67 ¶ 12.)  One of the charges against him was kidnapping under 18 Pa. Cons. Stat. § 2901.  (*Id.*)  That section provides, in pertinent part:

> **(b) Grading.--**Kidnapping is a felony of the first degree. A removal or confinement is unlawful within the meaning of this section if it is accomplished by force, threat or deception, **or**, in the case of a person who is under the age of 14 years or an incapacitated person, if it is accomplished without the consent of a parent, guardian or other person responsible for general supervision of his welfare.

18 Pa. Cons. Stat. § 2901(b) (emphasis added).  On May 2, 1994, Humbert was found guilty of kidnapping accomplished by force, threat or deception.  (Doc. 67 Ex. B.)  He was found not guilty of kidnapping of a person under 14 years or an incapacitated person without the consent of a parent or guardian.  (*Id.* Exs. B, B-1.)

On or around August 1994, the records supervisor at SCI-Camp Hill erroneously logged Humbert in as a prisoner convicted of kidnapping of a person under 14 years without consent of a parent or guardian.  (*Id.* ¶ 14.)  From on or

2

around 1998 until 2003, the records supervisor at SCI-Mahanoy allowed the record to continue to reflect the error made by the SCI-Camp Hill records supervisor.  (*Id.* ¶ 15.)

In or around December 2002, Humbert's parole agent advised him that he would be subject to providing a DNA blood sample prior to being paroled under the new Department of Corrections ("DOC") policy.  (Doc. 67 ¶ 17.)  On January 8, 2003, Defendant Langton drew Humbert's blood in order to obtain a DNA sample. (*Id.* ¶ 18.)  The sample was mailed to Defendant Kurtz.  (*Id.*)  In or around 2003, Kurtz entered a profile of Plaintiff's DNA in CODIS, the national DNA database maintained by the Federal Bureau of Investigation ("FBI").  (*Id.* ¶ 19.)  On or around March 12, 2003, the Megan's Law Unit registered Plaintiff as a convicted sex offender under Pennsylvania's Megan's Law.  (*Id.* ¶ 20.)

Humbert did not know that his profile had been placed in CODIS or that he had been registered under Megan's Law until January 2005.[1]  (*Id.* ¶ 11.)  In July 2005, Plaintiff made inquiries of family members as to why his daughter would not take his calls, and he was rejected.  (*Id.* ¶ 21.)  He later discovered that his daughter found his

---

[1] In his brief in opposition to the instant motion to dismiss, Plaintiff states that he learned from his criminal defense attorney in January 2005 that he had been registered under Megan's Law and that a profile of his DNA had been placed in CODIS. (Doc. 80 at 1, 5.)

picture on a website listing him as a sexual offender under Megan's Law.  (*Id.*)  As a result of his placement on the Megan's Law Registry, Humbert has been humiliated, suffers mental anguish, and has lost the love and affection of numerous family and friends.  (*Id.* ¶¶ 21, 23.)  As a result of the placement of his DNA profile on CODIS, Humbert was convicted of another crime for which he currently is serving a 70 year sentence.  (*Id.* ¶ 22.)  Plaintiff alleges violations of his rights under the First, Fourth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.  (*Id.* ¶ 24.)

### B.   Procedural History

In his first complaint filed on September 29, 2005, Plaintiff named the following defendants: 1) the warden of the Mahanoy State Correctional Institution ("SCI-Mahanoy), in Frackville, Pennsylvania; 2) Michael J. Kurtz, Pennsylvania State Police DNA Lab Supervisor; 3) the Pennsylvania State Police Megan's Law Unit, Harrisburg (identified in the caption as "Agency SPOL-Megan's Law Unit Harrisburg") ("Megan's Law Unit"); 4) Sergeant Robert DiGregorio of the Salem County Police Department; and 5) Sergeant George N. May of the Salem County Police Department.  (Doc. 1-1.)  Plaintiff's sole allegation in his first complaint was that, on January 8, 2003, DNA samples were taken from him and that he was falsely

4

logged as a sex offender under Megan's Law in violation of his Fourth and

Fourteenth Amendment rights.  (*Id.* at 4.)

On January 6, 2006, the warden of SCI-Mahanoy, Kurtz, and the Megan's Law

Unit moved to dismiss Plaintiff's complaint on the basis that the complaint was time-

barred and failed to state a claim against them.  (Doc. 24.)  Despite the court's

direction to Plaintiff to respond to the motion, he failed to do so.  (*See* Doc. 27.)

Therefore, by order dated May 15, 2006, the motion to dismiss was granted as

unopposed on the basis that Plaintiff's claim was time-barred, and the warden of SCI-

Mahanoy, Kurtz, and the Megan's Law Unit were dismissed as Defendants to the

action.  (Doc. 37.)

The remaining Defendants, DiGregorio and May, also filed  motions to dismiss

on the basis that Plaintiff's complaint is time-barred.  (Docs. 35, 47.)  In his

opposition to Defendant May's motion to dismiss, Plaintiff stated for the first time in

the course of this action that he was unaware of his registration under the

Pennsylvania's Megan Law until January 2005.  (Doc. 54-1 at 1-2.)  He outlined the

following version of events:

In January 2005, Plaintiff's criminal defense attorney, Andres Jalon, notified

him that he had been registered under Pennsylvania's Megan's Law.  (*Id.*)  Initially,

Plaintiff dismissed Jalon's statement as "frivolous and a misunderstanding" because he had never been convicted of any kind of sexual crime in Pennsylvania. (*Id.*) However, on January 31, 2005, Jalon presented Plaintiff with documents showing that he had been registered as a sex offender under Pennsylvania's Megan's Law. (*Id.* at 2.) The documents are attached to Plaintiff's brief as Exhibits A and A-1.[2] (Doc. 54-2 at 1-2.) Also attached to the brief are portions of a transcript from an argument Jalon made on January 31, 2005 before the Honorable R. Barclay Surrick in Plaintiff's criminal case.[3] (*Id.* at 3-6.)

On August 18, 2006, before this court disposed of the May and DiGregorio motions to dismiss, Humbert filed a motion for leave to file an amended complaint. (Doc. 58-1.) In his motion, he stated that he had determined that DiGregorio and May were not responsible for the allegations in his complaint, and thus he sought to have them removed as defendants. Plaintiff sought to name the following defendants:

---

[2]The source of the information contained in Exhibits A and A-1 is not clear on the face of the documents. Both documents are dated February 2, 2004. Exhibit A states that a DNA Database sample was drawn, that "community notification is not required and should not occur", and that Plaintiff had been registered as a sexual offender pursuant to Megan's Law. (Doc. 54-2 at 1.) Exhibit A-1 states that Plaintiff was registered with the Megan's Law Unit in Harrisburg on March 12, 2003. (Doc. 54-2 at 2.)

[3]The excerpt of the transcript contains Jalon's argument that the taking of blood from Plaintiff before his release on parole constituted "a search and a seizure" and violated his due process rights because he did not have an opportunity to be heard before he was registered under Megan's Law. (Doc. 54-2 at 3.)

three John/Jane Does, namely the records supervisors at the Camp Hill State Correctional Institution ("SCI-Camp Hill") and SCI-Mahanoy, and a parole agent; the Pennsylvania Board of Probation and Parole; and Registered Nurse Elaine A. Langton.  In addition, Plaintiff sought to name the previously dismissed defendants, Kurtz and the Megan's Law Unit.  (*See* Doc. 67.)  Plaintiff's motion for leave to amend his complaint was granted, and the DiGregorio and May motions to dismiss were denied as moot.  (Doc. 66.)  On April 10, 2007, Defendants the Pennsylvania Board of Probation and Parole, the Megan's Law Unit, Kurtz, and Langton filed the instant motion to dismiss the amended complaint.[4]  (Doc. 74.)

## II.   Legal Standard

Among other requirements, a sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This statement must "give the defendant fair notice of what the . . . claim is

---

[4]On February 20, 2008, Plaintiff filed a motion for summary judgment (Doc. 89) and supporting brief (Doc. 93) pursuant to Fed. R. Civ. P. 56.  On March 11, 2008, Defendants filed a motion to stay and supporting brief requesting that this court stay the proceedings on Plaintiff's motion for summary judgment pending disposition of Defendants' motion to dismiss. (Docs. 95, 96).  Because discovery has not been completed, Plaintiff's motion will be denied as premature without prejudice to renew his motion following the close of discovery.  Defendants' motion to stay will be denied as moot.

and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___,

127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

"Fair notice" in Rule 8(a)(2) "depends on the type of case – some complaints will

require at least some factual allegations to make out a showing that the pleader is

entitled to relief." *Phillips v. County of Allegheny*, No. 06-2869, 2008 WL 305025, at

*4 (3d Cir. Feb. 5, 2008) (quotation omitted).  "A situation may arise where, at some

point, the factual detail in a complaint is so undeveloped that it does not provide a

defendant the type of notice of claim which is contemplated by Rule 8." *Id.*  A

plaintiff must provide "more than labels and conclusions" or "a formulaic recitation

of the elements of a cause of action" to show entitlement to relief. *Twombly*, 127 S.

Ct. at 1965; *accord, e.g., Phillips*, 2008 WL 305025, at *4; *Baraka v. McGreevey*,

481 F.3d 187, 195 (3d Cir. 2007) (The court is not "compelled to accept unsupported

conclusions and unwarranted inferences or a legal conclusion couched as a factual

allegation." (quotations and citations omitted)); *Evancho v. Fisher*, 423 F.3d 347, 350

(3d Cir. 2005).

A defendant may attack a complaint by a motion under Rule 12(b)(6) for

failure to state a claim upon which relief can be granted.  In deciding a motion to

dismiss under Rule 12(b)(6), the court is required to accept as true all of the factual

8

allegations in the complaint, *Erickson v. Pardus*, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007), and all reasonable inferences permitted by the factual allegations, *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007), viewing them in the light most favorable to the plaintiff, *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007). *Accord Phillips*, 2008 WL 305025, at *3, 5. If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face," a complaint will survive a motion to dismiss. *Twombly*, 127 S. Ct. at 1965, 1974; *Phillips*, 2008 WL 305025, at *6; *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007); *Stevenson v. Caroll*, 495 F.3d 62, 66 (3d Cir. 2007). This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Twombly*, 127 S. Ct. at 1965, *quoted in Phillips*, 2008 WL 305025, at *6.

"Generally, in ruling on a motion to dismiss, a district court relies on the complaint, attached exhibits, and matters of public record." *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998

9

F.2d at 1196.  Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted).  However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003); *Youse v. Carlucci,* 867 F. Supp. 317, 318 (E.D. Pa. 1994).  Such a complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (*quoted in Erickson*, 127 S. Ct. at 2200).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient. *See, e.g., Fletcher-Harlee*

10

*Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000).  "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility."  *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

## III.   Discussion

Defendants assert three bases for dismissal of Plaintiff's claims.  They argue that Plaintiff's claims are barred by the statute of limitations, that Defendants have immunity against Plaintiff's claims under the Eleventh Amendment, and that the law of the case doctrine bars Plaintiff's claims against Defendants Kurtz and the Megan's Law Unit.  The court will discuss each of these arguments in turn.

### A.   Statute of Limitations

Defendants seek dismissal of Humbert's claims on the basis that they are barred by the applicable statute of limitations.  "Actions brought under 42 U.S.C. § 1983 are governed by the personal injury statute of limitations of the state in which the cause of action accrued."  *O'Connor v. City of Newark*, 440 F.3d 125, 126 (3d Cir. 2006).  The applicable Pennsylvania statute of limitations for personal injury actions is two

years.  42 Pa. Cons. Stat. § 5524; *Garvin v. City of Philadelphia*, 354 F.3d 215, 220

(3d Cir. 2003); *Lake v. Arnold*, 232 F.3d 360, 368 (3d Cir. 2000).

Although the applicable statute of limitations is borrowed from state law, "the

accrual date of a § 1983 cause of action is a question of federal law that is *not*

resolved by reference to state law." *Wallace v. Kato*, ___ U.S. ___, 127 S. Ct. 1091,

1095 (2007).  Rather, accrual of a § 1983 cause of action is "governed by federal

rules conforming in general to common-law tort principles.  Under those principles, it

is the standard rule that accrual occurs when the plaintiff has a complete and present

cause of action, that is, when the plaintiff can file suit and obtain relief."  *Id.* at 1095

(citations omitted).  Generally, therefore, the statute of limitations "begins to run from

the time when the plaintiff knows or has reason to know of the injury which is the

basis of the section 1983 claim."  *Genty v. Resolution Trust Corp.,* 937 F.2d 899, 919

(3d Cir. 1991) (citations omitted).  The plaintiff bears the burden of showing

extraordinary circumstances that warrant tolling the limitations period.  *Byers v.

Follmer Trucking Co.,* 763 F.2d 599, 601 (3d Cir. 1985).

In this case, Defendants contend that Humbert's injury occurred when his

blood was drawn for a DNA sample on January 8, 2003.  (Doc. 76 at 8.)  They assert

that Humbert also "clearly knew of his injury" when Defendant Langton drew his

blood because his parole agent had informed him one month earlier in December 2002 that his blood would be drawn for the purpose of taking a DNA sample.  (*Id.*)

However, in accepting all facts as true in Plaintiff's amended complaint, and viewing them in the light most favorable to him, it is apparent that Plaintiff's injury occurred in August 1994 when the records supervisor at SCI-Camp Hill erroneously logged Humbert in as a person convicted of kidnapping of a person under 14 years without consent of a parent or guardian.  (Doc. 67 ¶ 14.)  The drawing of Humbert's blood to obtain a DNA sample and his registration on the Megan's Law Registry were consequences of his original injury that would not have occurred but for the error made on his record in 1994.  Because the injury occurred in August 1994, the statute of limitations expired two years later in August 1996.  Plaintiff did not file the instant action until September 29, 2005, which was about nine years after the statute of limitations expired.

Humbert asserts that the discovery rule applies to toll the statute of limitations. (Doc. 80-1 at 4-5.)  While the accrual date of a § 1983 cause of action is a question of federal law, in general, federal courts have looked to state law for tolling rules.  *See Lake*, 232 F.3d at 368 (in borrowing state statute of limitations for § 1983 action, courts "must also incorporate any relevant state tolling rules").  The discovery rule

was adopted by Pennsylvania courts in recognition of the fact that some injuries are not immediately apparent. *See Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005); *Ayers v. Morgan*, 154 A.2d 788, 791 (Pa. 1959).

"The purpose of the discovery rule has been to exclude from the running of the statute of limitations that period of time during which a party who has not suffered an immediately ascertainable injury is reasonably unaware he has been injured, so that he has essentially the same rights as those who have suffered such an injury." *Id.* (citing *Hayward v. Medical Center of Beaver County,* 608 A.2d 1040, 1043 (Pa. 1992)). In Pennsylvania, the discovery rule has been applied in cases where the injured is unable, despite the exercise of reasonable diligence, to know that he is injured and what caused the injury. *See id.* (discovery rule applicable where surgical sponge left in plaintiff during operation nine years earlier but injury not immediately apparent); *Trieschock v. Owens Corning Fiberglas Co.*, 511 A.2d 863 (Pa. Super. Ct. 1986), *appeal denied* 521 A.2d 932 (Pa. 1987) (discovery rule applicable where injury from exposure to asbestos not immediately apparent). "Reasonable diligence" is "what is expected from a party who has been given reason to inform himself of the facts upon which his right to recovery is premised." *Fine*, 870 A.2d at 858. Thus, "there must be some reason to awaken inquiry." *Id.* (citations omitted). In other

14

words, the rule applies only where "the nature of the injury itself is such that no amount of vigilance will enable the plaintiff to detect the injury." *Dalrymple v. Brown*, 701 A.2d 164, 170 (Pa. 1997) (citing *Pocono Int'l Raceway v. Pocono Produce*, 468 A.2d 468, 471 (Pa. 1983)).  Thus, a statute of limitations does not begin to run until a "person knows or through the exercise of due diligence is able to ascertain that an injury has occurred." *Sterling v. St. Michael's School for Boys*, 660 A.2d 64, 66 (Pa. Super. Ct. 1995), *appeal denied*, 670 A.2d 142 (Pa. 1995) (limitations period began to run when plaintiff struck in eye with shoe, not when later diagnosed with permanent vision loss).

"If a party has the means of discovery within his power but neglects to use them, his claim will still be barred." *Burnside v. Abbott Laboratories*, 505 A.2d 973, 988 (Pa. Super. Ct. 1985).  Thus, the party seeking to benefit from the discovery rule has the burden of establishing their inability to know of the injury despite the exercise of reasonable diligence. *Dalrymple*, 701 A.2d at 167 (discovery rule inapplicable where plaintiff's repressed memory of childhood sexual assault prevented her from bringing suit within statute of limitations). *See also Baily v. Lewis*, 763 F. Supp. 802 (E.D. Pa. 1991) (same). "'[T]he question in any given case is not, what did the plaintiff know of the injury done him?  [B]ut, what might he have known, by the use

of the means of information within his reach, with the vigilance the law requires of him?'" *Fine,* 870 A.2d at 858 (quoting *Scranton Gas & Water Co. v. Lackawanna Iron & Coal Co.,* 31 A. 484, 485 (Pa. 1895).

The standard of reasonable diligence is an objective one that applies to all individuals rather than to a unique plaintiff. *Id.*; *Redenz by Redenz v. Rosenberg*, 520 A.2d 883, 886 (Pa. Super. Ct. 1987), *appeal denied*, 533 A.2d 93 (Pa. 1987). Even though the standard is objective, "'[i]t is sufficiently flexible . . . to take into account the difference[s] between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question.'" *Fine*, 870 A.2d at 858 (quoting *Crouse v. Cyclops Industries*, 745 A.2d 606, 611 (Pa. 2000)). Moreover, a plaintiff's own lack of knowledge as to who or what caused his injury is irrelevant. *Redenz*, 520 A.2d at 886 (discovery rule inapplicable where plaintiff claimed his infancy prevented him from knowing who caused injury to his hand until after limitations period expired).

"[W]hen a court is presented with the assertion of the discovery rules [*sic*] application, it must address the ability of the damaged party, exercising reasonable diligence, to ascertain that he has been injured and by what cause." *Fine*, 870 A.2d at 858 (citing *Crouse*, 745 A.2d at 611). "[T]he requisite level of diligence is generally

a question of fact, and therefore, an issue for the jury." *Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.*, 12 F. Supp. 2d 391, 415 (M.D. Pa. 1998); *see also Fine*, 870 A.2d at 858 (citing *Hayward*, 608 A.2d at 1043; *Smith v. Bell Telephone Co. of Pennsylvania*, 153 A.2d 477, 481 (Pa. 1959).

In the instant case, Humbert alleges that, in December 2002, his parole agent informed him that a "new DOC policy" required him to submit a DNA blood sample prior to being paroled.  (Doc. 67 ¶ 17.)  He further alleges that he was unaware until January 2005 that his DNA profile was placed on CODIS and that he was registered on the Megan's Law Registry.  (*Id.* ¶ 11.)  He does not specify when he became aware of the error that was made in 1994 on his DOC record.  If he was aware of the error at the time his blood was drawn, then it would seem that he should have exercised reasonable diligence to determine how his blood sample was used.  If, however, he did not have access to his DOC record and was unaware of the error, there would be no reason for him to investigate the way in which his blood sample was used when his parole officer told him it was being collected pursuant to a "new DOC policy."  Therefore, the question as to whether he exercised reasonable diligence is unanswered, and it would be inappropriate for the court to answer it at this stage.  *See Andritz Sprout-Bauer*, 12 F. Supp. 2d at 415.

17

While it is true that Plaintiff's complaint is somewhat lacking in that he does not specify the time when he became aware of the error that was made on his DOC record in 1994, he is only required to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). Therefore, taking into consideration the liberal notice pleading standard and the principle that the requisite level of diligence is generally a question of fact for the jury, the determination of whether the discovery rule is applicable to Humbert's claims is more appropriately reserved for a later stage of litigation.  *See id.*; Fed. R. Civ. P. 56; *Andritz Sprout-Bauer*, 12 F. Supp. 2d at 415.  Accordingly, Defendants' motion to dismiss will be denied as to all Defendants except the Pennsylvania Board of Probation and Parole and Megan's Law Unit.  The court now will address Plaintiff's claims against these Defendants.

**B.**     **Immunity**

The Pennsylvania Board of Probation and Parole and Megan's Law Unit seek dismissal of Humbert's claims on the basis that, as state agencies and arms of the state, they are protected by immunity under the Eleventh Amendment.  It is well established that, absent consent by a state, the Eleventh Amendment precludes civil

18

rights lawsuits against a state in federal court. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 238 (1995); *Edelman v. Jordan*, 415 U.S. 651, 664 (1974). The bar of the Eleventh Amendment extends to suits against agencies that function as an "arm of the state." *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 280 (1977). The Pennsylvania Board of Probation and Parole has been found to be an arm of the state entitled to the protections of the Eleventh Amendment. *Ahmad v. Burke*, 436 F. Supp. 1307, 1310-11 (E.D. Pa. 1977). While it does not appear that our courts have been asked to determine whether or not the Megan's Law Unit is an arm of the state, other units within the Pennsylvania State Police have been found to be arms of the state. *See Williams v. State Police- Bureau of Liquor Control Enforcement*, 108 F. Supp. 2d 460, 465 (E.D. Pa. 2000) (Bureau of Liquor Control Enforcement, as part of Pennsylvania State Police and an agency of the Commonwealth, is alter ego of the state for purposes of the Eleventh Amendment.) Accordingly, the Pennsylvania Board of Probation and Parole and Megan's Law Unit are entitled to immunity as arms of the state and will be dismissed from the case.

C.   **Law of the Case**

Defendant Kurtz seeks dismissal on the basis that the law of the case doctrine bars this action against him. Specifically, he argues that, when his previous

unopposed motion to dismiss (Doc. 24) was granted, this court determined that Plaintiff's claims against him were barred by the statute of limitations.  The doctrine of the law of the case dictates that "'when a court decides upon a rule of law, that rule should continue to govern the same issue in subsequent stages in the litigation.'"  *In re Resyn Corp.*, 945 F.2d 1279, 1281 (3d Cir. 1991) (quoting *Devex Corp. v. Gen. Motors Corp.,* 857 F.2d 197, 199 (3d Cir. 1988)).  While the doctrine is designed to protect such traditional ideals as finality, judicial economy, and jurisprudential integrity, the court has discretion as to whether to apply the doctrine.  *In re City of Philadelphia Litigation*, 158 F.3d 711, 717-18 (3d Cir. 1998).

In the instant case, the court will exercise its discretion not to apply the law of the case doctrine.  While it is true that the previous motion to dismiss was granted on the basis that the statute of limitations barred Plaintiff's claims against Kurtz, the motion was unopposed and Plaintiff had not yet raised the application of the discovery rule.  All that was before the court at that time was Plaintiff's complaint in which he merely alleges that, on January 8, 2003, DNA samples were taken from him and that he was falsely logged as a sex offender under Megan's Law in violation of his Fourth and Fourteenth Amendment rights.  (Doc. 1 at 4.)

Subsequently, Plaintiff asserted for the first time that he was unaware until January 2005 that his DNA profile had been placed on CODIS and that he had been

registered with the Megan's Law Registry.  (*See* Doc. 54.)  Plaintiff also has amended his complaint to plead his allegations with more specificity.  (*See* Doc. 67.) Therefore, the interests of justice weigh against applying the law of the case where Plaintiff's new allegations have been brought to light in his amended complaint and have been briefed by both sides in the instant motion to dismiss.


**IV.**     **Conclusion**

      For the foregoing reasons, Defendant's motion to dismiss (Doc. 74) will be granted in part as to the Pennsylvania Board of Probation and Parole and Megan's Law Unit and denied in all other respects.  Plaintiff's motion for summary judgment (Doc. 89) will be denied as premature without prejudice to his ability to renew the motion following the close of discovery.  Defendants' motion to stay (Doc. 95) will be denied as moot.  An appropriate order will issue.


                                s/Sylvia H. Rambo
                               SYLVIA H. RAMBO
                               United States District Judge

Dated: March 14, 2008.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ERIC HUMBERT,** | : | |
| | : | **CIVIL NO. 1:CV-05-1967** |
| **Plaintiff** | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **MICHAEL J. KURTZ,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

# O R D E R

In accordance with the foregoing memorandum, **IT IS HEREBY ORDERED THAT:**

1.  Defendants' motion to dismiss (Doc. 74) is **GRANTED** in part and **DENIED** in part.  The motion is **GRANTED** as to Defendants the Pennsylvania Board of Probation and Parole and Megan's Law Unit.  The motion is **DENIED** in all other respects.

2.  The Clerk of Court shall terminate Defendants the Pennsylvania Board of Probation and Parole and Megan's Law Unit.

3.  Plaintiff's motion for summary judgment (Doc. 89) is **DENIED** as premature without prejudice to renew his motion following the close of discovery.

   4.  Defendants' motion to stay (Doc. 95) is **DENIED** as moot.


                                            s/Sylvia H. Rambo
                                           SYLVIA H. RAMBO
                                           United States District Judge
Dated: March 14, 2008.