IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC HUMBERT, | : | |
| | : | |
| Plaintiff | : | CIVIL NO. 1:CV-05-01967 |
| | : | |
| v. | : | (Judge Rambo) |
| | : | |
| ELAINE A. LANGTON, *et al.*, | : | |
| | : | |
| Defendants | : | |

## M E M O R A N D U M

Before the court are two motions to dismiss Plaintiff Eric Humbert's

("Humbert") third amended complaint, filed on behalf of Defendants Michael J. Kurtz

and Elaine A. Langton, as well as a number of state officials ("PA Defendants").[1]

(Docs. 145 & 157.)  In his complaint, Humbert alleges that Defendant Langton

violated his right to privacy when she drew his blood for a DNA sample.  (Doc. 144.)

He also alleges that his subsequent DNA profile was improperly placed in the

---

[1]  Humbert names the following PA Defendants: former Pennsylvania State Police
("PSP") Commissioners Paul J. Evanko and Jeffrey B. Miller; Frank E. Pawlowski, present PSP
Commissioner; Benjamin Martinez, former chair of the Pennsylvania Board of Probation and Parole
("PA Parole Board"); Catherine C. McVey, present chair of the PA Parole Board; John Tuttle,
Director of the Office of Probation and Parole Services ("PA Probation Office"); Jeffrey A. Beard,
Secretary of the Department of Corrections ("DOC"); James C. Barnacle, director of the Office of
Professional Responsibility for DOC ("DOC OPR"); Kathleen Zwierzyna, director of Bureau of
Standards and Security for DOC; Thomas W. Corbett, Jr., Pennsylvania's Attorney General; John
Doe/Jane Doe DOC Defendants ("DOC Doe's"); John Doe/Jane Doe PA Parole Board Defendants
("BPP Doe's"); and John Doe/Jane Doe members of PSP's Megan's Law Unit Defendants ("PSP
Doe's").

Combined DNA Index System ("CODIS"). (*Id.*) In addition, he claims that he was erroneously registered as a sex offender under Pennsylvania's Megan's Law and listed as such on the Megan's Law website. (*Id.*) For the reasons set forth below, the motion to dismiss filed by Defendants Kurtz and Langton will be granted and the motion to dismiss filed by PA Defendants will be granted in part and denied in part.

## I. __Background__

### A. __Facts__

In the third amended complaint, Humbert provides the following factual background with respect to his claims. The court notes that for purposes of disposition of the instant motions to dismiss, the factual allegations asserted in the third amended complaint will be accepted as true and viewed in a light most favorable to Humbert.

#### 1. __Facts Alleged in Amended Complaint__

In or about 1992, Humbert was charged with approximately fifteen (15) crimes, including kidnapping under 18 Pa. Cons. Stat. § 2901. (Doc. 144 ¶ 19.) That section provides, in pertinent part:

> **(b) Grading**.– Kidnapping is a felony of the first degree. A removal or confinement is unlawful within the meaning of this section if it is

accomplished by force, threat, **or** deception, or, in the case of a person who is under the age of 14 years or an incapacitated person, if it is accomplished without the consent of a parent, guardian or other person responsible for general supervision of his welfare.

18 Pa. Cons. Stat. § 2901(b) (emphasis added).  On May 2, 1994, following a jury trial, Humbert was found guilty of kidnapping accomplished by force, threat or deception.  (*See* Doc. 151 at 4.)  However, the jury found him not guilty of kidnapping a person who is under the age of 14 years, *see* 18 Pa. Cons. Stat. Ann. § 2901.  (Doc. 144 ¶ 20.)

In or around August 1994, Defendants Beard, Barnacle, Zwierzyna, and/or DOC Doe's erroneously logged Humbert into the DOC records as a prisoner convicted of kidnapping of a person under 14 years without consent of a parent or guardian.  (*Id*. ¶ 21.)  From on or around 1998, his criminal record continued to reflect this error.  (*Id*. ¶ 22.)

In or around 2002, Defendant Martinez directed that Humbert's DNA sample be collected pursuant to his conviction under 18 Pa. Cons. Stat. § 2901.  (*Id*. ¶ 23.)  In December 2002, Defendant Tuttle and/or Defendant BPP Doe's informed Humbert that he was required to provide a DNA blood sample prior to being paroled.  (*Id*. ¶ 24.)  On January 8, 2003, Defendant Langton drew Humbert's blood in order to obtain a DNA sample.  (*Id*. ¶ 25.)  The sample was mailed to Defendant Kurtz at the

3

DNA Laboratory in Greensburg, Pennsylvania. (*Id*.) In or around 2003, Defendant

Kurtz entered a profile of Humbert's DNA into CODIS, the national DNA database

maintained by the Federal Bureau of Investigation ("FBI"). (*Id*. ¶ 27.) On or around

March 12, 2003, Defendant Evanko or Defendant Miller, and/or PSP Doe's registered

Humbert as a convicted sex offender under Pennsylvania's Megan's Law. (*Id*. ¶ 29.)

Humbert did not know that his profile had been placed in CODIS, or that he

had been registered under Megan's Law until his criminal defense attorney informed

him of such in January 2005. (*Id*. ¶ 31.) Throughout his period of incarceration,

Humbert had maintained a positive and ongoing relationship with various family

members, including his minor daughter. (*Id*. ¶¶ 32, 33.) However, beginning in late

spring and through summer 2005, his minor daughter and various other family

members cut off contact with Humbert. (*Id*. ¶¶ 34, 35.) In July 2005 he discovered

that his daughter viewed his listing on the Megan's Law website. (*Id*. ¶ 36.) As a

result of his placement on the Megan's Law Registry, Humbert has been humiliated,

suffers mental anguish, and has lost the love and affection of numerous friends and

family members, including his minor daughter. (*Id*. ¶¶ 37-39.) Further, Humbert is at

continuous risk of suffering serious bodily harm and/or death at the hands of fellow

inmates because of his placement on the Megan's Law Registry and website. (*Id*. ¶ 40.)

## 2. Megan's Law Registration and DNA Database

In his third amended complaint, Humbert asserts the following with respect to Pennsylvania's Megan's Law. Under Megan's Law, *see* 42 Pa. Cons. Stat. §§ 9791, *et seq*., as enacted in 1995 as 1995-24, PSP, PA Parole Board, the DOC, and their agents and employees, were charged with duties related to the creation and maintenance of the Megan's Law database.[2] (*Id*. ¶ 41.) As a result, when the law was first enacted in 1995, individual Defendants Evanko, Miller, Pawlowski, PSP Doe's, Martinez, McVey, Tuttle, BPP Doe's, Beard, Barnacle, Zwierzyna, and DOC Doe's, all had the responsibility of overseeing the creation and maintenance of the Megan's Law database. (*Id*. ¶ 42.)

With respect to Humbert's inclusion in the Megan's Law database, Humbert asserts that the above-named Defendants received actual notice of his wrongful inclusion on the Megan's Law database no later than September 29, 2005, the date that Humbert filed his original complaint. (*Id*. ¶ 44.) Prior to that date, however, Defendants Beard, Barnacle, Zwieryna, and DOC Doe's incorrectly identified

---

[2] Under Megan's law, these entities and individuals are afforded limited immunity when it has been found they acted in good faith. (Doc. 144 ¶ 43.)

Humbert as having been convicted of kidnapping a person under 14 years when, in fact, a jury found him not guilty of that charge. Due to this error, and without such a conviction, Defendants Evanko, Miller, Pawlowski, PSP Doe's, Martinez, McVey, Tuttle, and BPP Doe's lacked the grounds to enter, or cause entry of, Humbert's information into the Megan's Law database. (*Id*. ¶ 46.) As a result, Humbert alleges that these Defendants failed to act in good faith when they entered, or caused entry of, Humbert's information into the database, and continue to act in bad faith by maintaining his listing in the sexual offender registry and on the Megan's Law website. (*Id*. ¶ 45, 47.)

When Megan's Law was amended in 2000, *see* 42 Pa. Cons. Stat. Ann. § 9791, *et seq*., as enacted as Act 2000-18, the Pennsylvania Attorney General was added to the list of entities and individuals charged with the duties related to the creation and maintenance of the Megan's Law database. (*Id*. ¶ 52.) As a result, Humbert alleges that as of 2000, the Attorney General, as well as the above-named Defendants, have failed to act in good faith and continue to act in bad faith in maintaining Humbert's information on the Megan's Law website. (*Id*. ¶ 55.) He also alleges that these Defendants continue to cause him harm by failing to remove his name from the sexual offender registry and Megan's Law website. (*Id*. ¶ 56.)

Moreover, the court takes judicial notice of the following with respect to registration under Megan's Law. When Humbert was registered under Megan's Law and listed on the Megan's Law website on March 12, 2003, (*see* Doc. 144 ¶ 29), the following categories of individuals were required to register with the PSP for a period of ten (10) years, pursuant to 42 Pa. Cons. Stat. § 9795.1(a)(1):

> (1) Individuals convicted of any of the following offenses:
> 18 Pa. C.S. § 2901 (relating to kidnapping) where the victim is a minor.
> 18 Pa. C.S. § 3126 (relating to indecent assault) where the offense is a misdemeanor of the first degree.
> 18 Pa. C.S. § 4302 (relating to incest) where the victim is 12 years of age or older but under 18 years of age.
> 18 Pa. C.S. § 5902(b) (relating to prostitution and related offenses) where the actor promotes the prostitution of a minor.
> 18 Pa. C.S. § 5903(a)(3), (4), (5) or (6) (relating to obscene and other sexual materials and performances) where the victim is a minor.
> 18 Pa. C.S. § 6312 (relating to sexual abuse of children).
> 18 Pa. C.S. § 6318 (relating to unlawful contact with minor).
> 18 Pa. C.S. § 6320 (relating to sexual exploitation of children).
> (2) Individuals convicted of an attempt to commit any of the offenses under paragraph (1) or subsection (b)(2) (relating to felony sex offenses).

42 Pa. Cons. Stat. § 9795.1(a)(1) (West, Westlaw through Act No. 2002-134, S.B. No. 834, Nov. 20, 2002).

In their briefs in support of the instant motions to dismiss, both sets of Defendants discuss the Pennsylvania legislature's various versions of the DNA Act establishing the guidelines for a DNA database, which includes DNA information of

7

those convicted of felony sex offenses and other specified offenses. As the background of the DNA Act is relevant to Humbert's claim that he was improperly placed in CODIS, and Defendants have attached the legislative history as exhibits to the briefs,[3] a matter of public record, the court will recount Defendants' background herein.

In 1995, the Pennsylvania legislature enacted the DNA Detection of Sexual and Violent Offenders Act ("1995 DNA Act"), Act of May 28, 1995, 1st Sp. Sess., P.L. 1009, No.14, *as amended*, 35 P.S. §§ 7651-7651.1102 (repealed). (Doc. 151-2, Ex. A; Doc. 159 at 10.) That version of the bill states, in pertinent part,

> A person who has been convicted or adjudicated delinquent for a felony sex offense or other specified offense before the effective date of this section and who is still serving a term of confinement in connection therewith on the effective date of this section shall not be released in any manner prior to the expiration of his maximum term of confinement unless and until a DNA sample has been withdrawn.

(Doc. 151-2, Ex. A, at 2.) "Other specified offense" is defined as:

> An offense, or an attempt, conspiracy or solicitation to commit an offense, under any of the following:
> 18 Pa. C.S. § 2502 (relating to murder).

---

[3] Defendants Kurtz and Langton and PA Defendants are represented by the same attorney, Michael L. Harvey, Esquire, with the Office of Attorney General. Attorney Harvey attached the legislative history of Megan's Law to the first-filed brief in support of the motion to dismiss, or Defendant Kurtz and Langton's brief, (*see* Doc. 151-2 – 151-4), and makes references to such in the later-filed brief.

18 Pa. C.S. § 2709(c)(2)(ii) (relating to harassment and stalking).
18 Pa. C.S. § 3126 (relating to indecent assault).

(*Id*. at 4.)

In 2002, the legislature amended and recodified the 1995 DNA Act, Act of June 19, 2002, P.L. 394, No. 57, 42 Pa. Cons. Stat. §§ 4701-4741 (repealed) ("2002 DNA Act"). (Doc. 151-3, Ex. B, Doc. 159 at 10.) The 2002 DNA Act added the following offenses to the list of "other specified offense[s]" for which DNA samples are required:

18 Pa. C.S. § 2901 (relating to kidnapping).
18 Pa. C.S. § 2910 (relating to luring a child into a motor vehicle).
18 Pa. C.S. § 3126 (relating to indecent assault).
18 Pa. C.S. § 3502 (relating to burglary).
18 Pa. C.S. § 3701 (relating to robbery).

(Doc. 151-3, Ex. B, at 3-4.) The 2002 DNA Act became effective on December 16, 2002. (*Id*. at 11.) Blood for a DNA sample was withdrawn from Humbert about three weeks later on January 8, 2003. (Doc. 144 ¶ 25.) On or around that time, Defendant Kurtz directed that Humbert's DNA sample be placed in CODIS. (*Id*. ¶ 27.) In addition, Humbert was subsequently registered under Megan's Law and listed on the website on March 12, 2003. (*Id*. ¶ 29.)

Subsequently, by the Act of November 30, 2004, P.L. 1428, the Pennsylvania legislature repealed the 2002 DNA Act and moved the provisions of the 2002 DNA

Act to Chapter 23 of Title 44 of Pennsylvania's Consolidated Statutes, 44 Pa. Cons. Stat. §§ 2301-2336, effective January 31, 2005. In this most recent version, the "other specific offense" for which DNA samples are required is defined as a "felony offense[4]or an offense under 18 Pa. C.S. § 2910 (relating to luring a child into a motor vehicle) or 3126 (relating to indecent assault) or an attempt to commit such an offense." 44 Pa. Cons. Stat. § 2303. Further, in *DeWeese v. Weaver*, 880 A.2d 54 (Pa. Commw. Ct. 2005), *aff'd sub nom. DeWeese v. Cortes*, 906 A.2d 1193 (Pa. 2006), Pennsylvania's Commonwealth Court held that the provision of the 2002 DNA Act relating to comparative negligence violated the "single subject rule" set forth in Article 3, Section 3 of the Pennsylvania Constitution and, therefore, was unconstitutional and void.[5] This court decision, however, did not alter any of the provisions of the 2002 DNA Act authorizing the taking of DNA samples of prisoners convicted of certain offenses.[6] *See id*.

---

[4] The plain effect of this definition of "other specific offense" is to add *any* felony offenses to the list of offenses which require the taking of a DNA sample for placement in CODIS.

[5] Article 3, Section 3 of the Pennsylvania Constitution states: "No bill shall be passed containing more than one subject, which shall be clearly expressed in its title, except a general appropriation bill or a bill codifying or compiling the law or a part thereof."

[6] In *Karnes v. Attorney General of Pa.*, 921 A.2d 591, 593 (Pa. Commw. Ct. 2007), Pennsylvania's Commonwealth Court stated that its decision in *DeWeese* was on procedural grounds only:

**B.    Procedural History**

Humbert filed his original complaint *pro se* on September 29, 2005 against the following Defendants: "John Doe" Warden of the State Correctional Institution at Mahanoy ("SCI-Mahanoy"); Michael J. Kurtz; Megan's Law Unit employee "John Doe," listed as "agency SPOL, Megan's Law Unit, Harrisburg;" Sergeant Robert DiGregorio, Salem County Police; and Sergeant George M. May, Salem County Police.  (Doc. 1.)   The court directed service of the complaint on November 3, 2005.  (Doc. 13.)  On January 6, 2006, Defendants Kurtz, SPOL, and the SCI-Mahanoy Warden filed a motion to dismiss Humbert's complaint, alleging that his complaint was barred by the applicable statute of limitations.  (Doc. 24.)  Humbert failed to file a response to the motion, notwithstanding an express direction from the court to do so.  As a result, the court found that Humbert's claim was time-barred under the statute of limitations, and Defendants Kurtz, SPOL, and the SCI-Mahanoy Warden were dismissed from the case.  (Doc. 37.)

---

In the Court's earlier decision in *DeWeese v. Weaver*, 824 A.2d 364, 369 (Pa. Cmwlth. 2003), it observed that the challenge to Act 57 [2002 DNA Act] was "not to the substance of the law but to the procedure by which it was enacted . . . ."  As such, the Court did not invalidate Act 57 because the state's DNA testing of its prison population was categorically or per se unconstitutional nor did it hold that actions under Act 57 were nullified.  Therefore, Petitioner's DNA and fingerprint samples were not invalidated merely because Act 57 was held invalid.

*Karnes*, 921 A.2d at 593.

The remaining Defendants, DiGregorio and May, also filed motions to dismiss the complaint as time-barred. (Docs. 35 & 47.) In response, on August 18, 2006, Humbert filed a motion for leave to file an amended complaint, in which he conceded that since the filing of his complaint, he determined that Defendants Warden of SCI-Mahanoy, DiGregorio, and May were not responsible, and sought to have them removed from the suit. (Doc. 58.) In addition, Humbert sought to name new Defendants he claimed are responsible for the alleged constitutional violations. He identified these Defendants as the following: John/Jane Doe, Records Supervisor at the State Correctional Institution at Camp Hill ("SCI-Camp Hill"); John/Jane Doe, Records Supervisor at SCI-Mahanoy; PA Parole Board; Jane Doe, parole agent at SCI-Mahanoy; Elaine A. Langton; Michael J. Kurtz; and PSP's Megan's Law Unit. (*Id*.) On December 1, 2006, the court granted Humbert leave to file an amended complaint, accepted the amended complaint for filing, and directed service on the Defendants named therein. (Doc. 66.) Defendants filed a motion to dismiss the amended complaint on April 10, 2007. (Doc. 74.) On March 14, 2008, the court issued a memorandum and order granting in part and denying in part the motion to dismiss. (Doc. 97.) Specifically, the court found that the PA Parole Board and PSP's

12

Megan's Law Unit were entitled to governmental immunity pursuant to the 11th amendment and dismissed them from the action. (*Id*. at 18-19.)

The remaining Defendants filed an answer on April 30, 2008. (Doc. 105.) Thereafter, on August 21, 2009, following the appointment of counsel for Humbert (Doc. 118), Humbert filed a motion for leave to file a second amended complaint, (Doc. 129). In the motion, Humbert sought to add the following Defendants: former PSP Commissioners Paul J. Evanko and Jeffrey B. Miller; Frank E. Pawlowski, present PSP Commissioner; Benjamin Martinez, former chair of the PA Parole Board; Catherine C. McVey, present chair of the PA Parole Board; John Tuttle, Director of the PA Probation Office; Jeffrey A. Beard, Secretary of the DOC; James C. Barnacle, director of the DOC OPR; Kathleen Zwierzyna, director of Bureau of Standards and Security for DOC; Thomas W. Corbett, Jr., Pennsylvania's Attorney General; DOC Doe's; BPP Doe's; and PSP Doe's. (*Id*.) By order dated December 15, 2009, the court granted Humbert's motion and accepted the complaint for filing. (Doc. 141.)

Following a telephonic conference call held on December 21, 2009, (*see* Doc. 142), the court permitted Humbert to file a third amended complaint that added a claim for damages, (Doc. 143). The third amended complaint was filed on December 24, 2009. (Doc. 143.) Thereafter, on January 11, 2010, Defendants Langton and

Kurtz filed a motion to dismiss the third amended complaint, (Doc. 145), and

supporting brief, (Doc. 151). PA Defendants filed a motion to dismiss on April 5,

2010, (Doc. 157), along with a supporting brief, (Doc. 159). Responsive and reply

briefs have been filed, and thus the motions to dismiss are ripe for disposition.


## II.    Standard of Review - Motion to Dismiss

Among other requirements, a sound complaint must set forth "a short and plain

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

8(a)(2). This statement must "give the defendant fair notice of what the . . . claim is

and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Fair notice" in Rule

8(a)(2) "depends on the type of case – some complaints will require at least some

factual allegations to make out a showing that the pleader is entitled to relief."

*Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quotation omitted).

"[A] situation may arise where, at some point, the factual detail in a complaint is so

undeveloped that it does not provide a defendant the type of notice of claim which is

contemplated by Rule 8." *Id*. A plaintiff must provide "more than labels and

conclusions" or "a formulaic recitation of the elements of a cause of action" to show

entitlement to relief. *Twombly*, 550 U.S. at 555; *accord, e.g., Phillips*, 515 F.3d at 231-32; *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (the court is not "compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation.") (quotations and citations omitted)); *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). *See also Ashcroft v. Iqbal*, – U.S. –, 129 S. Ct. 1937, 1949 (2009) (recognizing that Rule 8 pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation") (quoting *Twombly*, 550 U.S. at 555).

A defendant may attack a complaint by a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007), and all reasonable inferences permitted by the factual allegations, *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007), viewing them in the light most favorable to the plaintiff, *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007). *Accord Phillips*, 515 F.3d at 233. If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its

15

face," a complaint will survive a motion to dismiss. *Twombly*, 550 U.S. at 555, 570; *Phillips*, 515 F.3d at 234; *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007); *Stevenson v. Carroll*, 495 F.3d 62, 66 (3d Cir. 2007). *See Iqbal*, 129 S. Ct. at 1949 (explaining a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Further, when a complaint contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 1950. However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*. at 1949 (citing *Twombly*, 550 U.S. at 555).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are

based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196.

Additionally, "documents whose contents are alleged in the complaint and whose

authenticity no party questions, but which are not physically attached to the pleading,

may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d

Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v Higgins*, 281 F.3d

383, 388 (3d Cir. 2002) ("Although a district court may not consider matters

extraneous to the pleadings, a document *integral to or explicitly relied* upon in the

complaint may be considered without converting the motion to dismiss into one for

summary judgment.") (internal quotation omitted).  However, the court may not rely

on other parts of the record in making its decision. *Jordan v. Fox, Rothschild,

O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

When presented with a *pro se* complaint, the court should construe the

complaint liberally and draw fair inferences from what is not alleged as well as from

what is alleged. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003); *Youse v.

Carlucci*, 867 F. Supp. 317, 318 (E.D. Pa. 1994).  Such a complaint "must be held to

less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 127 S.

Ct. at 2200 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

17

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient. *See, e.g.*, *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

## III.   **Discussion**

A plaintiff, in order to state a viable § 1983 claim, must plead two essential elements: 1) that the conduct complained of was committed by a person acting under color of state law, and 2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution and laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). A defendant's conduct must have a close causal connection to plaintiff's injury in order for § 1983 liability to attach. *Martinez v. California*, 444 U.S. 277, 285 (1980).[7] A prerequisite for a viable civil rights claim is

---

[7] The Court in *Martinez* explained: "Although a § 1983 claim has been described as 'a species of tort liability,' *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S. Ct. 984, 988, 47 L. Ed. 2d. 128 [(1976)], it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute." *Martinez*, 444 U.S. at 285.

that a defendant directed, or knew of and acquiesced in, the deprivation of a plaintiff's constitutional rights. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988).

In his amended complaint, Humbert alleges that Defendant Langton violated his right to privacy when she drew his blood for a DNA sample without proper legal authorization. (Doc. 144.) In connection with that claim, he also claims that the DNA profile created from the sample was then improperly placed in CODIS by Defendant Kurtz. (*Id*.) In addition, he claims that he was erroneously registered as a sex offender under Pennsylvania's Megan's Law and listed as such on the Megan's Law website. (*Id*.) The court will discuss these claims in turn.

A.     **DNA Profile**

Humbert contends that the collection of his DNA for placement in CODIS violates the Fourth Amendment to the United States Constitution as the procedure constitutes a warrantless search. The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. Therefore, "[t]he fundamental task of any Fourth Amendment analysis is assessing the reasonableness of the government search." *United States v. Sczubelek*, 402 F.3d 175, 182 (3d Cir. 2005)

(quoting *United States v. Knights*, 534 U.S. 112, 118 (2001)).  If a search is

reasonable, there is no violation of individual Fourth Amendment rights as the Fourth

Amendment proscribes only those searches and seizures that are unreasonable.

*Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989).  What is

reasonable "depends on all of the circumstances surrounding the search or seizure and

the nature of the search or seizure itself."  *Id.*  The court must balance "in the one

hand, the degree to which [the search] intrudes upon an individual's privacy and, on

the other hand, the degree to which [the search] is needed for the promotion of

legitimate governmental interests."  *Knights*, 534 U.S. at 119; *see also Skinner*, 489

U.S. at 619.

The Supreme Court has held that the drawing of blood for purposes of DNA

collection is a search subject to Fourth Amendment scrutiny.  *Skinner*, 489 U.S. at

616.  Further, in *Sczubelek*, the Third Circuit considered the constitutionality of

collecting DNA from prisoners under the authority of the DNA Analysis Backlog

Elimination Act of 2000 ("2000 DNA Act").  *Sczubelek*, 402 F.3d at 181-87.  In

finding the 2000 DNA Act constitutional under the Fourth Amendment, the court

balanced the legitimate governmental interests against the diminished expectation of

privacy of those previously convicted of a crime, and determined that the search and seizure was reasonable. *Id.* at 184-86.

The Third Circuit has also upheld the constitutionality of Pennsylvania's DNA Act. *See, e.g., Johnson v. Ogershok*, 134 F. App'x 535 (3d Cir. 2005) (Pennsylvania's DNA statute does not violate the Fourth Amendment); *Johnson v. Pa. Bd. of Probation and Parole*, 163 F. App'x 159 (3d Cir. 2006) (Pennsylvania's DNA statute does not violate *ex post facto* provision). Further, the Commonwealth Court of Pennsylvania has expressly upheld the 2002 codification of Pennsylvania's DNA Act. *See Luckett v. Blaine*, 850 A.2d 811, 816 (Pa. Commw. Ct. 2004). In doing so, the court first acknowledged that the 1995 DNA Act was valid and did not violate the Fourth Amendment, *see id.* (citing *Dial v. Vaughn*, 733 A.2d 1, 6 (Pa. Commw. Ct. 1999), then declared that the 2002 codification of the DNA Act "did not affect the continued validity of the *Dial* holding," *Luckett*, 850 A.2d at 816.[8]

Viewing the instant case under this legislative and judicial backdrop, the court finds that the extraction of Humbert's blood in 2003 for a DNA sample was not

---

[8] As discussed *supra* pp. 9-10, a subsequent state court ruling held that the provision of the 2002 DNA Act relating to comparative negligence violated the "single subject rule" set forth in Article 3, Section 3 of the Pennsylvania Constitution and, therefore, was unconstitutional and void. *DeWeese v. Weaver*, 880 A.2d 54 (Pa. Commw. Ct. 2005), *aff'd sub nom. DeWeese v. Cortes*, 906 A.2d 1193 (Pa. 2006). This court decision, however, did not alter any of the provisions of the 2002 DNA Act authorizing the taking of DNA samples of prisoners convicted of certain offenses. *See id.*

unconstitutional. The 2002 codification of Pennsylvania's DNA Act, ruled valid under both federal and state law, authorized the taking of DNA samples of prisoners convicted of, *inter alia*, kidnapping, *see* 18 Pa. Cons. Stat. § 2901, and burglary, *see* 18 Pa. Cons. Stat. § 3502. There is no dispute that Humbert was convicted of and sentenced for these crimes. Thus, Humbert's DNA sample was taken under the authority of a constitutionally valid Pennsylvania statute, and the taking of such in order for listing in CODIS does not violate the Fourth Amendment. Accordingly, the motions to dismiss as to this claim will be granted. Further, as Humbert has alleged a claim against Defendant Langton related only to the actual drawing of his blood for the DNA sample, she will be dismissed from this action. In addition, as Humbert has alleged a claim against Defendant Kurtz related only to his listing in CODIS, he will be dismissed from this action.

**B.    Registration under Megan's Law**

Humbert also claims that PA Defendants committed a substantive due process violation when they erroneously registered him as a sex offender under Pennsylvania's Megan's Law and listed him as such on the Megan's Law website. In

their motions to dismiss, both sets of Defendants contend that Humbert has failed to set forth such a claim.[9]

As to "due process," the Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV. The constitutional right to "substantive due process" protects individuals against arbitrary governmental action, irrespective of the fairness of the procedures used to implement them. *Foucha v. Lousiana*, 504 U.S. 71, 80 (1992). *See also Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of government.").

The United States Supreme Court has declined to set forth a precise rule that defines the exact scope of impermissible "arbitrary" conduct for purposes of applying the substantive component of the Due Process Clause. *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (clarifying that governmental conduct does not violate a person's substantive due process rights unless it amounts to an abuse of official power that "shocks the conscience."). *See generally Collins v. City of Harker*

---

[9] Even though Defendants Kurtz and Langton address this claim in their brief in support of their motion to dismiss, Humbert's third amended complaint does not include these Defendants in his claim relating to registration under Megan's Law. As such, the court will discuss this claim as it relates to PA Defendants only.

*Heights, Tex.*, 503 U.S. 115, 125 (1992) ("As a general matter, the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended. The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.") (citation omitted). Nevertheless, a standard for analyzing a substantive due process claims appears to depend on whether one is challenging legislative or executive action. *See, e.g.*, *Wagner ex rel. Wagner-Garay v. Forth Wayne Community Schools*, 255 F. Supp.2d 915, 922 (N.D. Ind. 2003) ("However, the appropriate standard for analyzing a substantive due process claim depends on whether 'legislation or a specific act of a government officer is at issue.'") (quoting *Dunn v. Fairfield Community High School Dist. No. 225*, 158 F.3d 962, 965 (7th Cir. 1998)). The PSP, PA Parole Board, and DOC are executive branch agencies. The standard of review for a substantive due process challenge to executive branch action requires that the aggrieved person establish that the executive action shocks the court's conscience. *See, e.g.*, *Hunterson v. DiSabato*, 308 F.3d 236, 247 n.10 (3d Cir. 2002) (wherein the Court of Appeals observed that "we have frequently employed the 'shocks the conscience' standard when considering a claim that an executive action amounted to a substantive due process violation.").

In the instant case, viewing the facts in a light most favorable to Humbert, the court finds that Humbert has pleaded facts sufficient to state a claim for a substantive due process violation. To that end, the court finds that a reasonable trier of fact may conclude that PA Defendants' actions in identifying him as a convicted sex offender and listing him as such on the Megan's Law website, even though he was acquitted of charges that would have caused him to be labeled as such, and continuing to maintain his listing on the website after being put on notice of his acquittal of those charges with the filing of this civil action in 2005, "shocked the conscience."[10]

Further, while PA Defendants argue that Humbert has failed to state a claim because the Third Circuit and other circuit courts have established that "injury to reputation caused by disclosures required by state sexual registration statutes does not implicate liberty interests," (Doc. 151 at 8-9; *see also* Doc. 159 at 14-15), the cases PA Defendants cite in support of this argument are distinguishable from the instant case. In each of those cases, the plaintiff was a convicted sex offender who argued that the registration requirements implicated privacy concerns that warranted

---

[10] The court notes that a name search on the Pennsylvania's Megan's Law website now returns no match for Humbert, thus apparently he was removed from the website at some point in time, though the court has not been provided with a time frame for that removal by any party. *See* http://www.pameganslaw.state.pa.us/SearchResults.aspx?Search=Name&FirstName=Eric&MiddleName=&LastName=Humbert&dt=LCFGCFDED4HNDHNEL4da (Last visited Aug. 23, 2010).

constitutional protection. (*See* Doc. 151 at 9) (citing *Paul P. v. Verniero*, 170 F.3d 396 (3d Cir. 1999); *E.B. v. Verniero*, 119 F.3d 1077 (3d Cir. 1997); *Cutshall v. Sundquist*, 193 F.3d 466 (6th Cir. 1999); *Russell v. Gregoire*, 124 F.3d 1079 (9th Cir. 1997)). However, in this case, Humbert is not a convicted sex offender, and his claim that being labeled a sex offender while incarcerated has created for him a continuous and ongoing fear for his personal safety, may be found by a reasonable trier of fact to "shock the conscience." Thus, the court will deny PA Defendants' motion to dismiss as to this claim.

IV. **Conclusion**

For the reasons set forth herein, the motions to dismiss will be granted as to Humbert's claim that Defendants violated his constitutional rights when a DNA sample was extracted and he was listed in CODIS. Further, Defendants Kurtz and Langton will be dismissed from this action. PA Defendants' motion to dismiss will be denied as to Humbert's claim that his constitutional rights were violated when he was labeled as a convicted sex offender and listed on the Megan's Law website.

An appropriate order will issue.

s/ Sylvia H. Rambo
United States District Judge

Dated: September 7, 2010.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**ERIC HUMBERT,**                           :
                                            :
          **Plaintiff**              :      **CIVIL NO. 1:CV-05-01967**
                                            :
    **v.**                                  :      **(Judge Rambo)**
                                            :
**ELAINE A. LANGTON,** *et al.*,            :
                                            :
          **Defendants**           :

# O R D E R

In accordance with the accompanying memorandum, **IT IS HEREBY**

**ORDERED THAT:**

1) Defendants Kurtz and Langton's motion to dismiss (Doc. 145) is

**GRANTED**.

2) Defendant Michael J. Kurtz is **DISMISSED** as a party in this action.

3) Defendant Elaine A. Langton is **DISMISSED** as a party in this action.

4) PA Defendants' motion to dismiss (Doc. 157) is **GRANTED** with respect to

Plaintiff's claim relating to the extraction of a DNA sample and his subsequent listing

in CODIS.

5)  PA Defendants' motion to dismiss (Docs. 157) is **DENIED** with respect to Plaintiff's claim relating to his registration under Megan's Law and subsequent placement on the Megan's Law website.

6)  PA Defendants are directed to file an answer to the third amended complaint within thirty (30) days of the date of this order.


s/ Sylvia H. Rambo
United States District Judge

Dated: September 7, 2010.