IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ERIC HUMBERT,** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL NO. 1:CV-05-01967** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **PAUL J. EVANKO,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

**M E M O R A N D U M**

Plaintiff Eric Humbert ("Humbert"), a former Pennsylvania state prisoner,[1] filed

this civil rights complaint pursuant to the provisions of 42 U.S.C. § 1983 on

September 29, 2005, (Doc. 2), as amended on December 24, 2009, (Doc. 144), against

various present and former Pennsylvania government officials.[2]  In his third amended

---

[1]  Humbert is currently incarcerated in the United States Penitentiary at Lee in Jonesville, Virginia.

[2]  Humbert names the following Defendants: former Pennsylvania State Police ("PSP") Commissioners Paul J. Evanko, Jeffrey B. Miller, and Frank E. Pawlowski; Benjamin Martinez, former chair of the Pennsylvania Board of Probation and Parole ("PA Parole Board"); Catherine C. McVey, present chair of the PA Parole Board; John Tuttle, former Director of the Office of Probation and Parole Services ("PA Probation Office"); Jeffrey A. Beard, former Secretary of the Department of Corrections ("DOC"); James C. Barnacle, director of the Office of Special Investigations for the DOC; Kathleen Zwierzyna, director of Bureau of Standards and Security for DOC; and, Thomas W. Corbett, Jr., Pennsylvania's Governor and former Attorney General.

Further, Humbert names in his complaint the following unidentified Defendants: John Doe/Jane Doe DOC Defendants ("DOC Doe's"); John Doe/Jane Doe PA Parole Board Defendants ("BPP Doe's"); and John Doe/Jane Doe members of PSP's Megan's Law Unit Defendants ("PSP Doe's").  As Plaintiff in this action, Humbert is responsible for identifying the parties named as defendants in order to effectuate service.  *See* Fed. R. Civ. P. 4(c); *Fulton v. United States*, 198 F. App'x 210, 214 (3d Cir. 2006).  To date, Humbert has not notified the court of any success on his

complaint, Humbert alleges that a DNA sample was taken from him erroneously and that his subsequent DNA profile was improperly placed in the Combined DNA Index System ("CODIS").  (Doc. 144.)  In addition, he claims that he was erroneously registered as a sexual offender under Pennsylvania's Megan's Law and listed as such on the Megan's Law website.  (*Id.*)  By memorandum and order dated September 7, 2010, the court granted in part and denied in part two motions to dismiss the third amended complaint.  (Doc. 172.)  The remaining issue before the court is whether Humbert's constitutional rights were violated when he was erroneously registered as a sexual offender under Megan's Law and not removed from the Megan's Law website until March 25, 2010.

Before the court is a motion for summary judgment filed on behalf of Defendants.  For the reasons set forth below, the motion for summary judgment will be granted in favor of Defendants.

---

part in identifying these unnamed defendants.  As such, the failure to identify and serve these defendants will result in the matter being dismissed as to "DOC Doe's," "BPP Doe's," and "PSP Doe's."  *Fulton*, 198 F. App'x at 214.

I.    **Background**

   A.    **Facts**

In support of their motion for summary judgment, Defendants submitted a statement of material facts.  (Doc. 210.)  Because Humbert has failed to file an opposing statement of material facts that comports with Middle District Local Rule 56.1, the following facts submitted by Defendants are deemed admitted.[3]

On May 15, 1995, Humbert was sentenced to a term of imprisonment of eight (8) to sixteen (16) years on multiple counts, including robbery, kidnapping, and burglary.  (Doc. 210 ¶ 1.)  However, it is noted that he was found not guilty by a jury on a count of kidnapping a person under the age of fourteen.  (Doc. 211-15 at 25, 37, Grimes Depo., Exs.)  His minimum term expired on May 18, 2002.  (*Id.*)

---

[3]   On January 17, 2012, Humbert's counsel filed a brief in opposition to the instant motion for summary judgment which included a section entitled "Plaintiff's Counter Statement of Facts."  (Doc. 218.)  This section, however, did not properly comport with Middle District Local Rule 56.1 in any fashion.  As a result, by order dated April 18, 2012, the court directed Humbert to file a separate counter statement of material facts by May 2, 2012.  (Doc. 228.)  Humbert's counsel filed a counter statement of material facts on May 1, 2012, (Doc. 229), but this document again did not comport with Middle District Local Rule 56.1.  The court issued an order on May 7, 2012 granting Humbert a final opportunity to resubmit a counter statement of material facts that comports with Middle District Local Rule 56.1.  (Doc. 230.)  The order also warned Humbert that if he failed to timely file this counter statement of facts, all material facts set forth in Defendants' statement of material facts shall be deemed admitted.  (*Id.*)  To date, Humbert's counsel has failed to resubmit a counter statement of material facts.  Thus, unless the record submitted on summary judgment counters any of Defendants' material facts, those material facts are deemed admitted.

On December 12, 2002, the Pennsylvania Board of Probation and Parole ("PA Parole Board") granted Humbert parole.  (Doc. 210 ¶ 2.)  At the time, Humbert was incarcerated at the State Correctional Institution at Mahanoy in Frackville, Pennsylvania ("SCI-Mahanoy") and was assigned to Patrice Schwalm as his parole agent.[4]  (*Id.* ¶ 3.)  Once an inmate is granted parole, his parole agent must complete a series of steps before the inmate can be released on parole.  (*Id.* ¶ 4.)  Among these steps is checking to see if the inmate is required to be registered under Megan's Law and, if so, to complete that registration.  (*Id.*)

From the records provided to Schwalm, she concluded that Humbert was required to register as a sexual offender under Megan's Law.  (*Id.* ¶ 5.)  The DOC Sentence Status Summary showed that Humbert had been convicted of kidnapping.  (*Id.*; Doc. 211-12 at 18-19, Schwalm Decl., Ex. D.)  Further, according to the official version of the crime provided to Schwalm by the Philadelphia District Attorney's Office, there were two victims of the kidnapping, one of whom was ten months old.  (Doc. 210 ¶ 5; Doc. 211-12 at 22-23, Schwalm Decl., Ex. E.)  At the time of Schwalm's review of Humbert's conviction, she did not have the ability to electronically check criminal dockets to confirm the disposition of charges.  (Doc. 210

---

[4]  Patrice Schwalm has never been a named Defendant in this action.

¶ 6.)  Defendants assert that there was no document either in the DOC files or Humbert's file provided to Schwalm that showed that Humbert had been found not guilty of a count of kidnapping a person under the age of fourteen.[5]  (*Id.*)

Schwalm provided Humbert with Sexual Offender Registration and Notification forms, which he signed in her presence on March 6, 2003.[6]  (Doc. 210 ¶ 7.)  She then forwarded both forms to the Pennsylvania State Police ("PSP").  (*Id.*)  Humbert was listed on the Megan's Law website as a sexual offender on March 12, 2003.  (Doc. 144 ¶ 29.)  In a declaration filed in conjunction with his brief in opposition to the

---

[5]  In his counseled brief in opposition to the instant motion, Humbert asserts that a document was "in the Defendants' possession" that "clearly and unambiguously" showed that Humbert was found not guilty of the kidnapping charge that would support reporting under Megan's Law.  (Doc. 218 at 9.)  This document, cited to by Humbert and appearing to be a record from the Pennsylvania State Police, is in the record as an exhibit attached to the deposition of Douglas E. Grimes, the Megan's Law Section Commander from July 14, 2007 to May 14, 2011.  (*See* Doc. 211-15 at 2, Grimes Dep.; Doc. 211-14 at 25-27, 31, Grimes Dep., Exs.)  Grimes is not a named Defendant in this case.  Furthermore, citing to this document alone does not demonstrate that Schwalm had it in her possession at the time she reviewed Humbert's case in 2002.

[6]  In his brief in opposition, Humbert states the following with respect to the signing of those forms:

> Plaintiff is expected to testify that he advised Schwalm, at the time she instructed him to sign Exhibit "F" of her Declaration, that he was not a Megan's Law offender. Plaintiff is expected to testify that he signed the acknowledgment proffered by Schwalm when she explained to him that if he did not sign the form, he would be incarcerated again.

(Doc. 218 at 9.)  These statements, as declared herein, do not serve as counter statements of fact.  *See supra* note 3.

5

instant motion, Humbert declares the following with respect to that March 6, 2003

meeting between himself and parole agent Schwalm:

> 6.  Subsequent to [being informed he made parole] plaintiff was called by
> Ms. Schwalm from his place of employment inside of the institution to
> sign his release papers.
>
> 7.  Ms. Schwalm had then advised plaintiff that he was required to submit
> to a DNA blood sample under the new Department of Corrections Policy
> and that if he had refused to provide the blood sample at that meeting;
> Ms. Schwalm then had made it very clear[ ] to plaintiff that if he did so,
> he would be looked [sic] up on the spot and taken to the whole [sic]
> ("solitary confinement") and his release date and parole would be
> revoked.
>
> 8.  Plaintiff had ***no reason to doubt*** this parole agent's demands insofar
> when Ms. Schwalm placed in front of him an assortment of a number of
> papers, an[d] instructed him to sign or place his initials at each spot she
> had pointed to that required a place of signature, indeed plaintiff followed
> those instructions.  Ms. Schwalm would then quickly flip to the next
> document to be signed until all of the documents had been signed or
> initialed.
>
> 9.  Plaintiff will testify at ***no*** time during that meeting with Ms. Schwalm
> to sign his release papers, that he had actual knowledge that any of the
> documents that he was instructed by her to quickly sign, were not
> applicable to him because plaintiff at that time had no reason to distrust
> or doubt Ms. Schwalm would have him sign anything that would hurt or
> harm him.

(Doc. 223 ¶¶ 6-9, Humbert Decl.) (emphasis in original).  In addition, in the third

amended complaint, Humbert avers that he was not informed of his registry on the

Megan's Law website until his attorney told him in January 2005.  (Doc. 144 ¶ 31.)

6

It was the responsibility of the PA Board of Parole to identify Humbert as a sexual offender.  (Doc. 210 ¶ 9.)  However, neither Defendant Tuttle, former Director of the Office of Probation and Parole Services ("PA Probation Office"), nor any Defendant from the PA Parole Board participated in the decision to register Humbert as a sexual offender.  (*Id.* ¶ 8.)  Further, no one from PSP or the Office of the Attorney General participated in any way in parole agent Schwalm's decision to have Humbert register as a sexual offender.  (*Id.*)  Defendants assert that the only DOC employees who participated in the decision were the staff within SCI-Mahanoy's records office. (*Id.*)

It was the practice of PSP's Megan's Law section that when a form faxed from a correctional facility arrived properly completed and signed by a parole agent, the registrant would be entered into the system.  (*Id.* ¶ 9.)[7]  It was also the practice of the section to investigate complaints made by the registrant by phone call or correspondence and correct them.  (*Id.* ¶ 11.)  If there was a need to verify the accuracy of the information to be entered into the system and a sentencing order accompanied the registration forms, Megan's Law section staff would check the sentencing order.  (*Id.* ¶ 10.)  If there was no accompanying sentencing order, staff

---

[7]   The court notes that Defendants' statement of material facts contains two statements numbered 9.  (*See* Doc. 210 at 3.)

would perform a criminal history check.  (*Id.*)  However, there is no guarantee that the information entered is necessarily entirely correct.  (*Id.*)

When Humbert was transferred from a federal penal facility in Pennsylvania to one in Virginia on March 24, 2010, he was marked as inactive for Megan's Law registration purposes and his information was removed from the website the following day.  (*Id.* ¶ 12.)  The Office of Chief Counsel of the State Police subsequently conducted an investigation into whether Humbert should have been registered as a sexual offender.  (*Id.* ¶ 13.)  The Office obtained the verdict sheet by facsimile on May 26, 2010, and determined that he was not required to be registered as a sexual offender.  (Doc. 212 at 12; Doc. 211-15, Grimes Dep. at 69, 81-82, Ex. 3.)

In addition to the statements of material fact set forth above, Defendants make the following assertions with respect to various individual Defendants.  Defendant Tuttle, current member of the PA Parole Board and former Director of the Office of Probation and Parole Services, had no involvement in making determinations as to whether paroled inmates were subject to the Megan's Law registration requirement. (Doc. 210 ¶ 14.)  Until he became aware of this lawsuit in October 2011, Defendant Tuttle had no knowledge of Humbert and was not aware of the issue involving

8

whether an individual had been misidentified as a sexual offender.  (*Id.* ¶ 15; Doc. 211-13, Tuttle Decl., ¶ 11.)

Defendant Zwierzyna, who served as the PA Parole Board Secretary in 2003, supervised hearing examiners and had no supervisory responsibilities over parole agents.  (Doc. 210 ¶ 16.)  Defendant McVey, PA Parole Board Chair, had no involvement in making determinations as to whether a parolee should be registered as a sexual offender under Megan's Law.  (*Id.* ¶ 17.)  Defendant Martinez, a member of the PA Parole Board, did not have any personal involvement in decisions as to whether a parolee should be registered as a sexual offender under Megan's Law.  (*Id.* ¶ 18.)

Defendant Evanko, former PSP Commissioner, left Commonwealth employment on January 22, 2003, before Humbert was registered as a sexual offender under Megan's Law, and had no involvement in that decision.  (*Id.* ¶ 19.)  Defendant Miller, who served as Acting PSP Commissioner from January 22, 2003 through March 23, 2003, and PSP Commissioner from March 24, 2003 until August 8, 2008, had no direct oversight and no input into the daily operations of the Megan's Law section or the Bureau of Records and Identification.  (*Id.* ¶ 20.)  Defendant Miller was not aware of Humbert's lawsuit until after he retired on August 8, 2008.  (*Id.* ¶ 21.)

Defendant Pawlowski, who became Acting PSP Commissioner in August 2008 and later served as PSP Commissioner, did not have any responsibility either as a supervisor or otherwise with the Megan's Law section prior to becoming PSP Commissioner.  (*Id.* ¶ 22.)  Throughout his career, Defendant Pawlowski had virtually no involvement in the Megan's Law section.  (*Id.* ¶ 23.)  He does have a vague recollection of a lawsuit regarding an individual being on the Megan's Law sexual offender list, but does not remember specific details.  (*Id.* ¶ 24.)  If an individual made a complaint about being erroneously listed as a sexual offender on the Megan's Law list, Defendant Pawlowski would expect the Bureau of Records and Identification to investigate or, if the complaint was made by lawsuit, the PSP Chief Counsel's Office. (*Id.* ¶ 25.)

Defendant Beard, former Secretary of the DOC, had no involvement in making determinations as to whether inmates being released from prison should be registered as sexual offenders under Megan's Law.  (*Id.* ¶ 26.)  And finally, Defendant Barnacle, as Director of the Office of Special Investigations for the DOC, had no involvement in making determinations as to whether inmates being released from prison should be registered as sexual offenders under Megan's Law.  (*Id.* ¶ 27.)  Further, he was not employed by the DOC until January 14, 2008.  (*Id.*)

10

### B.    Procedural History

Humbert filed his original complaint, *pro se*, on September 29, 2005 against the following Defendants: "John Doe," Warden of the State Correctional Institution at Mahanoy ("SCI-Mahanoy"); Michael J. Kurtz; Megan's Law Unit employee "John Doe," listed as "agency SPOL, Megan's Law Unit, Harrisburg;" Sergeant Robert DiGregorio, Salem County Police; and Sergeant George M. May, Salem County Police.  (Doc. 1.)  The court directed service of the complaint on November 3, 2005.  (Doc. 13.)  On January 6, 2006, Defendants Kurtz, SPOL, and the SCI-Mahanoy Warden filed a motion to dismiss Humbert's complaint, alleging that his complaint was barred by the applicable statute of limitations.  (Doc. 24.)  Humbert failed to file a response to the motion, notwithstanding an express direction from the court to do so.  As a result, the court found that Humbert's claim was time-barred under the statute of limitations, and Defendants Kurtz, SPOL, and the SCI-Mahanoy Warden were dismissed from the case.  (Doc. 37.)

The remaining Defendants, DiGregorio and May, also filed motions to dismiss the complaint as time-barred.  (Docs. 35 & 47.)  In response, on August 18, 2006, Humbert filed a motion for leave to file an amended complaint, in which he conceded that since the filing of his complaint, he determined that Defendants Warden of SCI-

11

Mahanoy, DiGregorio, and May were not responsible, and sought to have them removed from the suit.  (Doc. 58.)  In addition, Humbert sought to name new Defendants he claimed are responsible for the alleged constitutional violations.  He identified these Defendants as the following: John/Jane Doe, Records Supervisor at the State Correctional Institution at Camp Hill ("SCI-Camp Hill"); John/Jane Doe, Records Supervisor at SCI-Mahanoy; PA Parole Board; Jane Doe, parole agent at SCI-Mahanoy; Elaine A. Langton; Michael J. Kurtz; and PSP's Megan's Law Unit. (*Id.*)  On December 1, 2006, the court granted Humbert leave to file an amended complaint, accepted the amended complaint for filing, and directed service on the Defendants named therein.  (Doc. 66.)  Defendants filed a motion to dismiss the amended complaint on April 10, 2007.  (Doc. 74.)  On March 14, 2008, the court issued a memorandum and order granting in part and denying in part the motion to dismiss.  (Doc. 97.)  Specifically, the court found that the PA Parole Board and PSP's Megan's Law Unit were entitled to governmental immunity pursuant to the Eleventh Amendment and dismissed them from the action.  (*Id.* at 18-19.)

The remaining Defendants filed an answer on April 30, 2008.  (Doc. 105.) Thereafter, on August 21, 2009, following the appointment of counsel for Humbert (Doc. 118), Humbert filed a motion for leave to file a second amended complaint,

(Doc. 129).  In the motion, Humbert sought to add the following Defendants: former

PSP Commissioners Paul J. Evanko and Jeffrey B. Miller; Frank E. Pawlowski,

present PSP Commissioner; Benjamin Martinez, former chair of the PA Parole Board;

Catherine C. McVey, present chair of the PA Parole Board; John Tuttle, Director of

the PA Probation Office; Jeffrey A. Beard, Secretary of the DOC; James C. Barnacle,

director of the DOC OPR; Kathleen Zwierzyna, director of Bureau of Standards and

Security for DOC; Thomas W. Corbett, Jr., Pennsylvania's Attorney General; DOC

Doe's; BPP Doe's; and PSP Doe's.  (*Id.*)  By order dated December 15, 2009, the

court granted Humbert's motion and accepted the complaint for filing.  (Doc. 141.)

Following a telephonic conference call held on December 21, 2009, (*see* Doc.

142), the court permitted Humbert to file a third amended complaint that added a

claim for damages, (Doc. 143).  The third amended complaint was filed on December

24, 2009.  (Doc. 144.)  Thereafter, on January 11, 2010, Defendants Langton and

Kurtz filed a motion to dismiss the third amended complaint, (Doc. 145), and

supporting brief, (Doc. 151).  The remaining Defendants filed a motion to dismiss on

April 5, 2010, (Doc. 157), along with a supporting brief, (Doc. 159).  After responsive

and reply briefing was submitted, by memorandum and order dated September 7,

2010, the court granted the motion to dismiss filed by Defendants Langton and Kurtz,

13

and dismissed them as parties in this action.  (Doc. 172.)  The court also granted the remaining Defendants' motion with respect to Humbert's claim relating to the extraction of a DNA sample and his subsequent listing in CODIS, but denied the motion with respect to Humbert's claim relating to his registration under Megan's Law and subsequent placement on the Megan's Law website.  (*Id.*)  Thus, the court directed the remaining Defendants to answer the third amended complaint.  (*Id.*)

On October 18, 2010, the remaining Defendants answered the third amended complaint.  (Doc. 180.)  After the court granted several motions for an extension of time to conduct discovery and to file dispositive motions, (Docs. 189, 194, 198, 200, 204 & 208), Defendants filed the instant motion for summary judgment on December 3, 2011, (Doc. 209).  Responsive and reply briefing has been filed, (Docs. 218 & 225), and thus the instant motion is ripe for disposition.

## II.   **Standard of Review - Summary Judgment**

Federal Rule of Civil Procedure 56 sets forth the standard and procedures for the grant of summary judgment.  Rule 56(a) provides, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law. Fed

R. Civ. P. 56(a); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001).  A factual dispute is "material" if it might affect the outcome of the suit under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party.  *Id.*  The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party.  *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322. "'Such

15

affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

## III.   <u>Discussion</u>

A plaintiff, in order to state a viable § 1983 claim, must plead two essential elements: 1) that the conduct complained of was committed by a person acting under color of state law, and 2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution and laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). A defendant's conduct must have a close causal connection to plaintiff's injury in order for § 1983 liability to attach. *Martinez v. California*, 444 U.S. 277, 285 (1980).[8] A prerequisite for a viable civil rights claim is that a defendant directed, or knew of and acquiesced in, the deprivation of a plaintiff's constitutional rights. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988).

---

[8] The Court in *Martinez* explained: "Although a § 1983 claim has been described as 'a species of tort liability,' *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S. Ct. 984, 988, 47 L. Ed. 2d. 128 [(1976)], it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute." *Martinez*, 444 U.S. at 285.

16

In the instant motion for summary judgment, Defendants argue that the court should grant summary judgment in their favor because Humbert's claims are barred by the statute of limitations.  In the alternative, Defendants argue that the record shows that: (1) Defendants had no personal involvement in the decision to have Humbert register as a sexual offender under Megan's Law, and (2) mistakenly having Humbert register as a sexual offender is not conduct that shocks the conscience.

## A.   Statute of Limitations

Defendants contend that the record shows Humbert was aware that he would be registered as a sexual offender under Megan's Law when he completed and signed the registration and notification forms on March 6, 2003 in the presence of parole agent Schwalm.  Because he did not file his action until September 29, 2005, more than two years after he signed the forms, Defendants argue that Humbert's claim relating to registration under Megan's Law is barred by the two-year statute of limitations.  In response, Humbert concedes that the statute of limitations for this action is two years, but contends that his erroneous registration under Megan's Law until March 2010 triggers the continuing violations doctrine, and thus the statute of limitations has been tolled.

17

In reviewing the applicability of the statute of limitations to an action filed pursuant to § 1983, a federal court must apply the appropriate state statute of limitations which governs personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985); *Urrutia v. Harrisburg Cnty. Police Dept.*, 91 F.3d 451, 457 n.9 (3d Cir. 1996). The United States Supreme Court clarified its decision in *Wilson* when it held that "courts considering § 1983 claims should borrow the general or residual [state] statute for personal injury actions." *Owens v. Okure*, 488 U.S. 235, 250 (1989); *see also Little v. Lycoming Cnty.*, 814 (M.D. Pa. 1996), *aff'd* 101 F.3d 691 (3d Cir. 1996) (Table). Pennsylvania's applicable personal injury statute of limitations is two years. *See* 42 Pa. Cons. Stat. § 5524(7); *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) ("The statute of limitations period for a § 1983 claim arising in Pennsylvania is two years."). The statute of limitations "begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action." *Gentry v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991) (citations omitted). The plaintiff bears the burden of showing extraordinary circumstances that warrant tolling the limitations period. *Byers v. Follmer Trucking Co.*, 763 F.2d 599, 601 (3d Cir. 1985).

The continuing violations doctrine is an "equitable exception to the timely filing requirement," which applies "when a defendant's conduct is part of a continuing practice." *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001). Under the doctrine, "an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *Id.* Further, as set forth in *Cowell*,

> In order to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts." *West* [*v. Philadelphia*], 45 F.3d 744, 755 (quotation omitted). Regarding this inquiry, we have recognized that courts should consider at least three factors: (1) subject matter - whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency - whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence - whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. *See id.* at 755 n.9 (citing *Berry v. Bd. of Supervisors of Louisiana State Univ.*, 715 F.2d 971, 981 (5th Cir. 1983)). The consideration of "degree of permanence" is the most important of the factors. *See Berry*, 715 F.2d at 981.

*Cowell*, 263 F.3d at 292.

Here, there is no question that Humbert signed the sexual offender registration and notification forms on March 6, 2003, witnessed by parole agent Schwalm. (*See* Doc. 211-12 at 25-26.) The first form signed by Humbert on that date is clearly labeled as "Pennsylvania State Police - Sexual Offender Registration - Megan's Law."

19

(*Id.* at 25.)  The second form signed by Humbert on that date is clearly labeled as

"Pennsylvania State Police - Sexual Offender Registration Notification - Megan's

Law."  (*Id.* at 26.)  The latter form clearly informs the offender that he has "been

convicted of a sexual offense and [is] required to register with the Pennsylvania State

Police," and sets forth the requirements for doing so.  (*Id.*)  This documentation shows

that Humbert was aware that he was to be registered as a sexual offender under

Megan's Law on March 6, 2003, the date on which he signed the forms, and therefore

the statute of limitations began to run on that date.

In his brief in opposition, Humbert makes several assertions to counter

Defendants' statute of limitations argument.  First and most notably, Humbert claims

that he told parole agent Schwalm on March 6, 2003 that he had not committed a

crime that would require he register as a sexual offender.  This assertion signals to the

court that Humbert was aware of the nature of the sexual offender registration and

notification documents at the time that he was being asked to sign them.

Nevertheless, he claims that he signed the documentation provided to him by parole

agent Schwalm on March 6, 2003 under duress, having been threatened with future

incarceration if he refused to sign the forms.  This latter assertion, not supported by

any evidence in the record, is irrelevant and does not support an exception to the

20

timely filing requirement under the two year statute of limitations.  Rather, Schwalm

presenting Humbert with the registration and notification forms and directing him to

sign them on March 6, 2003 was an isolated act sufficiently permanent to "trigger

[Humbert's] awareness of and duty to assert his . . . rights" during the limitations

period.  *Cowell*, 263 F.3d at 292; *see also Ozoroski v. Maue*, 460 F. App'x 94, 94 (3d

Cir. 2011) (finding the plaintiff's claims against a defendant were time-barred because

they rested on an isolated event Plaintiff was aware of during the limitations period).

However, Humbert did not bring suit until September 29, 2005, or after the two year

limitations period had expired, and therefore his claims are barred as untimely.

Humbert also asserts, "At some point after being released from prison, but prior

to initiating this suit, it is believed that Plaintiff informed several of the various

Defendants that he was erroneously identified as a sexual offender."  (Doc. 218 at 14.)

This vague assertion is not supported by any evidence in the record.  In fact, there is

nothing in the record demonstrating that any of the named Defendants knew of

Humbert's claims prior to his filing suit on September 29, 2005.  It is true that the

originally-named Defendants effectively became aware of Humbert's claims when he

filed suit on September 29, 2005, and that his information was not removed from the

Megan's Law website until March 25, 2010.  However, as the court has already

21

determined that the continuing violations doctrine does not apply, these facts do not affect Defendants' argument that the statute of limitations had expired at the time he filed suit.  Thus, his claims are barred as untimely.

Finally, in his declaration filed in support of his brief in opposition to the instant motion, Humbert asserts that he did not understand the significance of the sexual offender registration and notification forms when parole agent Schwalm instructed him to sign them on March 6, 2003, and therefore the statute of limitations should be tolled until he was informed of the registration by his criminal attorney in January 2005.  (Doc. 223.)  In Pennsylvania, the statue of limitations period begins to run when the plaintiff learns of the injury and its cause.  *Straker v. Deutsche Bank Nat'l Trust*, Civ. No. 3:09-CV-338, 2011 WL 398374, at * 6 (M.D. Pa. Feb. 3, 2011) (citing *Wilson v. El-Daief*, 964 A.2d 354, 359 (Pa. 2009)).  To invoke the discovery rule, a plaintiff must "establish that he exhibited those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others."  *Kach v. Hose*, 589 F.3d 626, 642 (3d Cir. 2009) (citing *Wilson*, 964 A.2d at 363 n.6)).  In Pennsylvania, the discovery rule has been applied in cases where the injured in unable, despite the exercise of reasonable diligence, to know that he is injured and what caused the injury.

22

*See Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005) (discovery rule applicable where surgical sponge left in plaintiff during operation nine years earlier but injury not immediately apparent); *Trieschock v. Owens Corning Fiberglas Co.*, 511 A.2d 863 (Pa. Super. Ct. 1986), *appeal denied* 521 A.2d 932 (Pa. 1987) (discovery rule applicable where injury from exposure to asbestos not immediately apparent). "Reasonable diligence" is "what is expected from a party who has been given reason to inform himself of the facts upon which his right to recovery is premised." *Fine,* 870 A.2d at 858.

Here, the record reflects that the two forms Humbert signed on March 6, 2003 were clearly marked as  "Pennsylvania State Police - Sexual Offender Registration - Megan's Law" and "Pennsylvania State Police - Sexual Offender Registration Notification - Megan's Law," respectively.  Further, the Registration form indicates that by his signature, Humbert is acknowledging the following:

> I verify the facts set forth in this form are true and correct to the best of my knowledge, information, and belief.  This verification is made subject to the penalties of Section 4904 of Title 18, Crimes Code, relating to unsworn falsification to authorities, and any of the applicable provisions contained in Title 42, Judicial Code, Chapter 97, Subchapter H.

(Doc. 211-12 at 25.)  The Registration Notification form indicates that by his signature, Humbert "acknowledge[s] the above requirements as set forth by applicable

23

provisions of Title 42, Judicial Code, Chapter 97, Subchapter H.  I understand I will be committing a felony of the first or third degree should I fail to fulfill any requirement." (*Id.* at 26.)  Humbert's failure to carefully read these clearly-defined documents before signing them demonstrates that he has not established "those qualities of attention, knowledge, intelligence and judgment which society requires of its members." *Kach*, 589 F.3d at 642.  Simply stated, Humbert cannot claim that he did not discover that he was registered as a sexual offender under Megan's Law until January 2005 simply because he failed to read the documents that would register him before he signed them on March 6, 2003. *See Walker v. West Michigan Nat'l Bank & Trust*, 324 F. Supp. 2d 529, 535 (D. Del. 2004) (concluding that plaintiff's claim that she did not read papers before she signed them provides no basis to toll the statute of limitations).  Since by exercising reasonable diligence Humbert could have discovered the facts which are the basis of his claims within the applicable statute of limitations, there is no basis for concluding that the statute of limitations in this case was tolled at any point, and thus Humbert's claims are barred as untimely.

In conclusion, Humbert's arguments and assertions with respect to the tolling of the applicable statute of limitations fail.  The court agrees with Defendants that his claims are untimely.

24

### B.   **Personal Involvement of Defendants**

Even though the court has already determined that Humbert's claims are barred as untimely, in an abundance of caution the court will address Defendants' alternative argument involving the personal involvement of Defendants in this case.  In the instant motion, Defendants make two arguments with respect to personal involvement: (1) no named Defendant had knowledge of, or participated in, the determination to register Humbert as a sexual offender under Megan's Law; and (2) no named Defendant can be held liable for failure to remove Humbert from the sexual offender registry.  The court will address both arguments in turn.

Liability under § 1983 is personal in nature and a defendant is liable only if the plaintiff has established that he was personally, affirmatively involved in the alleged wrongdoing.  *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997), *abrogated in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).  A defendant who supervised the wrongdoer but did not personally participate in the wrongful act is not liable under § 1983 on a theory of *respondeat superior* unless he personally directed or had actual knowledge of, and acquiesced in, the deprivation.  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (citing *Monell v. New*

25

*York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)); *Robinson*, 120 F.3d at 1294.  A defendant who lacked any supervisory power over the wrongdoer and who was not personally, affirmatively involved in the alleged wrongful conduct is not liable under § 1983.  *Id.*

### 1.    Determination to Register Humbert as Sexual Offender

The undisputed record shows that none of the Defendants had knowledge of, or participated in, the determination to register Humbert as a sexual offender under Megan's Law.  Rather, as she sets forth in her declaration on record, it was parole agent Schwalm who made the determination that Humbert should be registered as a sexual offender under Megan's Law, based on the documentation provided to her on Humbert's convictions.  (Doc. 211-12 at 1-5.)  She also declared, "I did not consult with anyone from the Pennsylvania State Police or the Office of Attorney General in making my determination . . . .  No one from either of these two departments participated in any way in that decision."  (*Id.* at 4 ¶ 10.)  Further, she declared that no one in the Department of Corrections outside of the SCI-Mahanoy records office participated in the decision.  (*Id.* at 4 ¶ 11.)  Incidentally, none of the SCI-Mahanoy records office staff are named Defendants.  Finally, she declares that did not consult with any member of the PA Parole Board or Defendant Tuttle, who at the time was the

26

Director of the Office of Probation and Parole Services, in making her decision.  (*Id.* at 4-5 ¶ 12.)  While Humbert argues that the record contains documentation that "clearly and unambiguously" identified him as being found not guilty of a kidnapping charge that would have required sexual offender registration, there is nothing in the record to support that parole agent Schwalm had that documentation when she made her determination.  Further, in his brief in opposition, Humbert states, "While some of the supervising Defendants may not have been aware of Plaintiff's allegations of wrongful designation at the time he was identified as an offender, they were or reasonably should have been made aware of such designations no later than the time at which they (or the organizations for which they were responsible) were named as Defendants in this litigation." (Doc. 218 at 18.)  This assertion does not support a conclusion that any of the named Defendants knew of the determination to register Humbert as a sexual offender under Megan's Law on March 6, 2003.  Thus, Humbert has failed to establish the personal involvement of any of the named Defendants in the initial determination to register Humbert as a sexual offender under Megan's Law.

## 2.    Failure to Remove Humbert from Sexual Offender Registry

Defendants also argue that no named Defendant can be held liable for failing to remove Humbert from the sexual offender registry.  The court agrees.

First, it is noted that under Megan's Law, when the PA Parole Board grants parole to a sexual offender or sexually violent predator, it has a duty to "collect registration information from the offender or sexually violent predator and forward that registration information to the Pennsylvania State Police." 42 Pa. Cons. Stat. § 9795.2(a)(4)(I).  The PA Parole Board also has a duty to inform the paroled sexual offender or sexually violent predator of his obligation to register and to provide residence information to the Pennsylvania State Police.  42 Pa. Cons. Stat. § 9799.2(1).  It is then the duty of the Pennsylvania State Police alone to "[c]reate and maintain a State registry of offenders and sexually violent predators."  42 Pa. Cons Stat. § 9799.1(1).[9]  Accordingly, in this case none of the named Defendants from the PA Parole Board or Department of Corrections or the former Attorney General had the authority to remove Humbert's name from the sexual offender registry and therefore cannot be held liable for his or her failure to do so.  Thus, Defendants Martinez, McVey, Tuttle, Beard, Barnacle, Zwierzyna, and Corbett will be dismissed because they were not personally, affirmatively involved in the wrongful conduct.

---

[9]  This registry is presumably created by the State Police after an effort by the State Police, the PA Parole Board, the State Sexual Offenders Assessment Board, the Department of Corrections, the Department of Transportation and any other agency deemed necessary by the Governor, "to collaboratively design, develop and implement an integrated and secure system of communication, storage and retrieval of information to assure the timely, accurate and efficient administration of this subchapter."  42 Pa. Cons. Stat. § 9798.2.

Turning to the three former State Police Commissioners named as Defendants in this action, the court finds that none of the former commissioners are personally liable for failing to remove Humbert from the sexual offender registry.  First, the record reflects that Defendant Evanko served as the State Police Commissioner from March 21, 1995 until his retirement on January 22, 2003.  (Doc. 211-8 at 1-3 ¶ 1, Evanko Decl.)   Because Defendant Evanko left the employment of the Commonwealth before Humbert was registered as a sexual offender under Megan's Law, he was never in a position to remove Humbert's name from the registry.  (*See id.* ¶ 8.)  Moreover, Humbert does not dispute that Defendant Evanko left Commonwealth employment at that time.  As such, Defendant Evanko will be dismissed as a party for lack of personal involvement.

Second, the record reflects that Defendant Miller served as the acting State Police Commissioner from January 22, 2003 through March 23, 2003, and State Police Commissioner from March 24, 2003 until his retirement on August 8, 2008. (Doc. 211-11 at 1-3 ¶ 1, Miller Decl.)  Defendant Miller was added as a Defendant in this case by virtue of Humbert's third amended complaint, which was mailed to Defendant Miller on February 2, 2010.  (*See* Doc. 153.)  In his declaration filed in support of the instant motion, Defendant Miller declares that he had no part in the

process of registering and maintaining Humbert on the registry, and was not aware of any dispute about Humbert's registry until he received the third amended complaint, mailed on February 2, 2010.[10]  (Doc. 211-11 at 1-3 ¶¶ 7, 9.)  While Humbert claims that documents produced by Defendants in discovery prove that all of the PSP Defendants, including Defendant Miller, had notice of Humbert's claim at or around the time he filed his initial complaint, there is nothing in this record indicating that Defendant Miller personally directed or had actual knowledge of, and acquiesced in, the wrongful act of failing to remove Humbert from the registry.  Rather, Humbert appears to be seeking recovery against Defendant Miller solely on the basis of his position as a supervising official.  He has not shown that Defendant Miller knowingly turned a blind eye to the wrongful conduct at the time he was the supervising official.  *See Haberstick v. Nesbitt*, No. Civ.A. 97-6523, 1998 WL 472447, at *4 (E.D. Pa. July 29, 1998) (a supervisor is liable "if he knows about the conduct and facilitates it, approves it, condones it, or turns a blind eye to it").  Further, by February 2, 2010, Defendant Miller was already retired as State Police Commissioner and thus had no

--------

[10]   In his third amended complaint, Humbert alleges that Defendant Miller received "actual notice" of his claim with respect to registry in the Megan's Law database no later than September 29, 2005, the date Humbert filed his initial complaint. (Doc. 144 ¶ 44.)  However, Defendant Miller was not named as a Defendant until Humbert filed the third amended complaint on December 24, 2009, which subsequently was mailed on February 2, 2010.  (*See* Doc. 153.)

authority at that point to remove Humbert from the registry.  Thus, Defendant Miller will be dismissed as a party for lack of personal involvement.

Third and finally, the record reflects that Defendant Pawlowski was the State Police Commissioner when he was added as a Defendant by virtue of Humbert's third amended complaint, which was mailed to Defendant Pawlowski on February 2, 2010. (*See* Doc. 153.)  In that amended complaint, Humbert alleges that Defendant Pawlowski acted "in bad faith and in contravention of Plaintiff's Constitutional right by continuing to keep him actively listed in the sexual offender registry and on the Megan's Law Website."  (Doc. 144 ¶ 47.)  In his deposition taken for this case, Defendant Pawlowski testified that as State Police Commissioner, he did not have direct responsibility over the Megan's Law Unit; rather his responsibility was limited to his supervisory position as Commissioner.  (Doc. 211-3 at 5-6, Pawlowski Dep.)  He stated, "throughout my career, I had virtually no involvement with the Megan's Law unit."  (*Id*. at 6.)  In addition, when asked if, during his tenure as Commissioner, he recalled receiving notice that he was named as a Defendant in a suit where the plaintiff claimed he was wrongly identified as a Megan's Law offender, Defendant Pawlowski stated only that he had a "vague recollection of a Megan's Law case, and it had to do with an individual being on the list, but I could not remember the specifics."

31

(*Id.* at 8.)  He testified that if an individual made a complaint about being erroneously listed on the Megan's Law registry, the Bureau of Records and Identification would investigate the complaint.  (*Id.* at 10, 12.)  If a complaint was filed by lawsuit, Defendant Pawlowski would expect the PSP chief counsel's office to address it.  (*Id.* at 12.)  He added that if he received a complaint, he would not have sent it anywhere for internal investigation because he was "under the assumption that the matter would already have been addressed at a lower level chain of command."  (*Id.* at 10.)  This evidence demonstrates that Defendant Pawlowski did not provide any oversight with respect to the Megan's Law registry, nor did he participate in investigating any complaints about the registry.  In the absence of any evidence beyond Humbert's conclusory allegations that Defendant Pawlowski knew of and acquiesced in his continued listing on the sexual offender registry, the court concludes that Defendant Pawlowski cannot be held liable for failing to take action to remove Humbert from the Megan's Law registry.  Even assuming that Defendant Pawlowski did know in fact of Humbert's allegations, "it is not acquiescence on his part to allow his subordinates to do their duty with respect to investigating those allegations."  *Alexander v. Forr*, Civ.

No. 3:CV-04-0370, 2006 WL 2796412, at *19 (M.D. Pa. Sept. 27, 2006).  Thus,

Defendant Pawlowski will be dismissed as a party for lack of personal involvement.[11]

## IV.   <u>Conclusion</u>

For the reasons set forth herein, the motion for summary judgment will be

granted in favor of Defendants because Humbert's claims are barred by the applicable

statute of limitations and he has failed to demonstrate the personal involvement of any

of the named Defendants.

An appropriate order will issue.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated:  June 21, 2012.

---

[11]  Having determined that not only are Humbert's claims barred by the applicable statute of limitations but also that the named Defendants have no personal involvement in the claims, the court need not address Defendants final argument that Defendants' alleged conduct does not shock the conscience.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ERIC HUMBERT,** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL NO. 1:CV-05-01967** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **PAUL J. EVANKO, *et al.*,** | : | |
| | : | |
| **Defendants** | : | |

## <u>O R D E R</u>

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT:**

1) The motion for summary judgment (Doc. 209) is **GRANTED** in favor of Defendants.

2) The Clerk of Court is directed to **ENTER** judgment in favor of Defendants and against Plaintiff.

3) The Clerk of Court is directed to **CLOSE** this case.

                                            s/Sylvia H. Rambo
                                            SYLVIA H. RAMBO
                                            United States District Judge

Dated:  June 21, 2012.